IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR397 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER M. CALLAWAY, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by its counsel, Carol M. Skutnik, Acting United States Attorney, and Jennifer J. King, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant, Christopher M. Callaway ("Callaway").  In the words of one of Callaway's victims whom he found online and then traveled to rape and abuse, "I truly believe he will always reoffend. If he has access, he will always find a way."  For the reasons set forth below and those to be articulated at the sentencing hearing, the United States submits that a within-guidelines sentence of at least 50 years (600 months) is appropriate in this case.

I.      **PROCEDURAL HISTORY**

On October 30, 2024, Callaway was indicted with six counts of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a), one count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  (Indictment).  Callaway entered an open plea to the Indictment on March 18, 2025.  (R. 19:  Presentence Report Investigation ("PSR"), PageID 102). On Counts 1 through 6,

1

Callaway faces a statutory mandatory minimum term of imprisonment of 15 years up to 30 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100 and $5,000. On Count 7, Callaway faces a statutory mandatory minimum term of imprisonment of five years up to 20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100 and $5,000. On Count 8, Callaway faces imprisonment up to 20 years; a fine of $250,000; supervised release for a minimum of five years up to life; and a special assessment of $100 and $5,000. If only the mandatory minimum terms of imprisonment were to be run consecutive in this case, Callaway would be facing 95 years in prison. That is not taking into consideration that Callaway produced and distributed sexually explicit images of 21 victims, not just the six victims for which he was indicted.

## II.    SENTENCING GUIDELINES COMPUTATION

Callaway's total offense level is properly calculated as 43. (R. 19: PSR, PageID 118). The U.S. Pretrial and Probation Department calculated Callaway's adjusted offense level at a level 53. (Id.). Pursuant to Chapter 5, Part A, in the rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as 43. (Id.). Based on a total offense level of 43 and a criminal history category of I, the guideline imprisonment range is life. (Id.). Since the maximum of the applicable guideline range is higher than a combination of all statutory authorized maximum sentences, the guideline term of imprisonment is 2,640 months. (Id.).

The guideline range is properly calculated in the PSR with numerous enhancements and multiple count adjustments appropriately applied by the probation department. Callaway does not object to any of the enhancements listed in the presentence report. (Id., PageID 139). The government therefore requests that this calculation be adopted by the Court. However, Callaway's true level of victimization cannot be quantified by the guidelines since he preyed on nearly two

2

dozen identified victims and the guidelines default to a total offense level of 43 regardless of the mass trauma inflicted by the defendant.

### III.    APPLICATION OF § 3553(A) FACTORS

#### A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

Callaway's criminal conduct is extremely serious and demands an appropriately stringent sentence. He targeted a vulnerable population of mostly teenage girls. Moreover, he manipulated them by posing as a father-figure, boyfriend, and gift-giver to victims already in difficult situations. He preyed on children less likely to report his sexual abuse or be believed by adults.

The PSR's factual basis gives a sanitized and abbreviated version of the situations that created the images Callaway produced. (R. 19:  PSR, PageID 102-12).  Just one of the victim's encounters with Callaway could produce a full PSR, but here there are 23 unique victims. The government refers to the detailed accounts contained in the PSR and asks that the Court adopt them as fact. As the indictment charges, Callaway groomed his multitude of victims simultaneously from 2015 to 2022. Callaway, in his 30s, sought underage girls ages 10 to 17 years old.

Although each victim's experience was different, there was a theme present with each. Callaway would initiate contact with the minor online through a messaging app, such as KIK, SnapChat or Facebook.  He specifically sought out Daddy/Daughter groups focused on older men communicating with girls. Callaway ingratiated himself to his victims by being a "father-figure", telling them he loved them, purchasing them food or clothing, and/or sending them money or gift cards. Sometimes he simply paid them for nude images or videos of them masturbating, but most often, Callaway developed relationships. Callaway purchased onesies, pacifiers, sex toys, and lingerie that he directed his child victims to use in the pornography that he produced. Callaway sent pictures of his penis and videos of himself masturbating to the victims.  He even shared the

3

pornography of his other victims to either encourage the victim to make similar pornography or to manipulate the girls with jealousy. Callaway traveled to Virginia and Florida to record his rape of two victims and brought victims back to his residence in Ohio.

The victims Callaway chose came from a variety of homes, but he specifically preyed on the most vulnerable—girls who were in foster care, had recent deaths in the family, had been previously sexually abused, or had drug additions. When the victims would not comply with his demands, Callaway threatened to share their images with their family or post them widely on the internet. He threatened to harm himself by returning to his own drug addiction or would make promises to move in with them or marry them when they turned 18. The state-victim that brought about the search warrant at Callaway's residence in September 2022 attempted suicide by drug overdose after communicating to Callaway that he "used her."

Callaway's sentence should reflect the severity of the nature and circumstances of his offense. The government recognizes that 50 years will span most if not all of Callaway's remaining life, but it is appropriate considering the life-altering sexual abuse he committed on 20+ victims identified in the PSR and the hundreds of unidentified victims in the 20,000+ images and videos of CSAM Callaway possessed.[1]

---

[1] Life equivalent sentences are appropriate in specific circumstances. See United States v. Taylor, 442 Fed.Appx. 215 (6th Cir. 2011), (**360-month** sentence for two production convictions upheld); United States v. Donald Jones, Cr. No. 11-82-WES, (1st Cir. 2011), (defendant with prior molestation conviction sentenced to **50 years** imprisonment after travelling to Rhode Island to have sex with a minor in a sting case); United States v. Gaccione, 977 F.3d 75 (1st Cir. 2020) (affirming a **2,160 month** sentence for production of child pornography, and distribution and possession, for a father who abused his teen daughter and produced child pornography over a period of years); United States v. Demeyer, 665 F.3d 1374, 1375 (8th Cir. 2012) (recognizing that even a **750-year** sentence may be defensible on incapacitation and seriousness grounds for a defendant "whose child pornography offenses victimized his granddaughters").

B.  <u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

Callaway is only 40 years old, yet he has a criminal record indicating he will be a sexual predator the rest of his adult life. (R. 19:  PSR, PageID 119-122).  His criminal history includes a probation sentence in 2015 for Illegal Use of a Minor in a Nudity-Oriented Material and Disseminating Matter Harmful to Juveniles. (<u>Id</u>., PageID 119).  Callaway's conduct in the 2015 case is very similar to the conduct in the underlying case and involved him sending and receiving sexually-oriented material from a 14-year-old female in New York. (<u>Id</u>.). Callaway violated his probation and was sentenced to prison but was still granted judicial release and termination of his probation in 2021. (<u>Id</u>.). It should be noted that while on probation from 2015 to 2021 Callaway was continuing to prey on the victims in the underlying case.

Just four months after Callaway's probation was terminated on his first sex offense, the Nevada victim's sexual abuse material produced by Callaway was discovered. (<u>Id</u>., PageID 121). After the search warrant at his Ohio residence in September 2022, Callaway was charged with Importuning, Pandering Sexually Oriented Matter Involving a Minor, Illegal Use of Minor in Nudity-Oriented Material, and Disseminating Matter Harmful to Juveniles. (<u>Id</u>.). He is currently serving an 8-to-10-year prison sentence for this state offense, and he is expected to be released in 2030. (<u>Id</u>.). The government requests that his sentence in the underlying case be run consecutive to his state case.

Critically, Callaway's sexual interest in children is palpable. Thousands of child sex abuse videos were found on Callaway's devices. The defendant also kept scores of child sex abuse videos on various digital storage devices and boxes of letters and mementos he shared with his victims. Moreover, Callaway's expansive collection of child sex abuse media featured bestiality, bondage,

5

and a wide range of sex acts. There is nothing in Callaway's childhood, adult life, or physical/mental health that can excuse his perverse behavior.

Callaway grew up in Northeast Ohio and described a "positive upbringing with a loving family." (Id., PageID 122-23). Although he experienced poverty and drug abuse in childhood, he had supportive influences on his life. (Id., PageID 123). He denied any physical abuse but witnessed his father sexually abuse a family member and had knowledge of his father continuing to sexually abuse minors. (Id.). Despite the negative impact this had on Callaway, it did not produce any deterrent from his own sexual abuse of minor girls.

Callaway's drug abuse began in his childhood and remained a theme in his life until he was arrested in 2019. (Id., PageID 126). He received some treatment and had periods of sobriety. (Id., PageID 126-27). Callaway graduated high school and was consistently employed in various factory and industrial maintenance positions despite his extensive drug use. (Id., PageID 127).

Callaway collected videos of child rape crime scenes, but he clearly was not content to live vicariously through other individuals who exploit children; Callaway had to victimize children himself. The depth of Callaway's depravity—as evidenced by his history and characteristics, and considered together with the nature and circumstances of the offenses—weighs heavily in favor of the weighty sentence that the United States seeks.

C.  NEED FOR THE SENTENCE IMPOSED TO REFLECT SERIOUSNESS OF OFFENSE, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT, AND AFFORD ADEQUATE DETERRENCE

A Guidelines sentence of 50 years also meets the sentencing goals of adequate deterrence, respect for the law, protection of the public, and just punishment in this case. See 18 U.S.C. § 3553(a). Callaway has demonstrated that he is a danger to the public. No child is safe in his presence. He has mastered the repulsive art of manipulating pre-teen and teenage girls into

6

recording sexual acts and disseminating it to the internet where it can never be erased. All of these facts underscore the risk that the defendant poses to children in the future. "Congress [has] explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders." United States v. Allison, 447 F.3d 402, 405-06 (5th Cir. 2006); see also United States v. Pugh, 515 F.3d 1179, 1201 (11th Cir. 2008) ("As Congress has found and as we have discussed, child sex offenders have appalling rates of recidivism and their crimes are under-reported."). A Guidelines sentence of 50 years will protect children from further crimes of the defendant.

In Bistline, the Sixth Circuit noted a reasonable sentence must reflect the seriousness of the offense or provide for any general or specific deterrence.[2]  A sentence at or near the mandatory minimum would offend the seriousness of the offense and the impact on its victims.  Congress has plainly indicated "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse."[3]  The words of Congress and many courts echo those of the victims themselves.  For many victims, the downloading of images is additional trauma to the initial act of abuse.  These victims express embarrassment of being depicted in these extremely vulnerable situations.  They also express fear of being watched and subsequently recognized by people like Callaway who fixate on videos and images of them.

Callaway committed child exploitation offenses in the comfort and privacy of his home and then boldly traveled out of state to rape a few of his victims. He abused a position of trust he falsely curated over his victims.  He alone is responsible for his actions and the impact they have had on the children that sent him images or are depicted in the images he produced.  Callaway should not be punished any less because he has offended against such an unfathomably large group

---

[2] See United States v. Bistline, 665 F.3d 767-68 (6th Cir. 2012).
[3] 18 U.S.C. § 2251 (Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub. L. No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)).

of children. The vulnerable state some of the victims were in at the time of the abuse should not be considered as mitigation towards Callaway. The law protects minors that cannot or will not protect themselves.  Callaway amassed, sought out, and enticed minors to create child pornography in addition to raping and recording minors. The sentence imposed should reflect the seriousness of Callaway's actions, promote respect for the law, and provide just punishment.

## VI.   **MONETARY PENALTIES**

### A.  FINE AND 18 U.S.C. § 3014 ADDITIONAL SPECIAL ASSESSMENT

The PSR found Callaway is unable to pay a fine within the guideline range.  (R. 19: PSR, PageID 129).  The government would defer to the Court regarding a fine but would first request that full restitution be ordered to Callaway's victims.  Callaway is subject to a mandatory $40,000 ($5,000 for each of the five counts in the Indictment) Additional Special Assessment under 18 U.S.C. § 3014.

### B.  RESTITUTION REQUESTS AND VICTIM IMPACT STATEMENTS

In this case, 9,925 images and 9,882 videos depicting child sexual abuse material were on Callaway's devices. Not a single image has been identified by the National Center for Missing and Exploited Children (NCMEC) as children previously identified by law enforcement. As such, there are no restitution requests from the known series of CSAM.  Additionally, Victims 1 through 21 have not made restitution requests at this time.

Two victims have submitted written victim impact statements.  The statements have been provided to the probation department, defense counsel, and this Honorable Court. The Government respectfully requests that these statements be considered at the time of sentencing.  Additionally, two of the victims plan to attend the sentencing hearing. The Government would respectfully ask that they be permitted to address the Court and read their statement aloud.

## VI.  CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that this Court impose a sentence of at least 50 years imprisonment.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By:     /s/ Jennifer J. King
        Jennifer J. King (OH: 0089375)
        Assistant U.S. Attorney
        801 West Superior Avenue, Suite 400
        Cleveland, Ohio 44113
        Tel. No. (216) 622-3759
        E-mail: Jennifer.King@usdoj.gov